THE ERASTUS CORNING.

(District Court, D. Connecticut.   January 8, 1908.)

No. 1,532.

SHIPPING—STRANDING OF VESSEL—LIABILITY FOR NEGLIGENCE IN CARE OF
    PASSENGERS.

Where a steamer ran upon a rock in the night, it was negligence for those in charge to permit passengers to leave in a small boat without a competent seaman in charge, which rendered the vessel liable to one of such passengers for the loss of his effects, and for physical injuries resulting from his exposure for several hours in the open boat, with only his underclothing to protect him from the cold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 538-552.]

In Admiralty.

Cushman, Dewell & Cushman, for libelant.

Edward H. Rogers and Convers & Kirlin, for damage claimant.

PLATT, District Judge.   The claim of Raffaelo Granicci for $2,000 was duly made before the commissioner by affidavit dated February 19, 1907, and a report filed February 26, 1907, shows that no other claims were presented.   In the spring of last year I heard the evidence, but became seriously ill before I could consider the matter.   Since recovering a fair share of health, the burden of new work, coupled with an attempt to clear up at odd moments the accumulation of cases heard but undisposed of when the illness came, has delayed final action herein until now.   It will be obvious to the dullest understanding that brevity is an essential factor in the equation between work decently performed and the maintenance of a steady recovery of my former vigor.

The steamer Erastus Corning left New Haven on the night of December 22, 1903, bound for New York through Long Island Sound.   At about 1:30 a. m. December 23d she ran upon a rock off South Norwalk, Conn.   The libelant has produced no proof sufficient to show that the accident was unavoidable, and I am satisfied, from the evidence presented to me, and find, that the accident was due to the negligence of those in charge of the steamboat.   This point, however, seems unimportant because I shall find positively that the claimant's loss and damage were caused directly by later acts of negligence for which they are clearly chargeable.   The claimant had worked for a farmer at Montowese, near New Haven, for some years.   Just prior to the accident, he applied to the farmer for money due him for his work.   The farmer went to New Haven, obtained some cash, and brought it out to the farm in bills.   These bills were put in a handkerchief, which was placed in his inside coat pocket, and secured by a pin so that it could not slip out.   He swears there was $800 in bills so placed, and the farmer swears to the same thing.   The farmer's wife and another witness only tell about bills being placed in the handkerchief and pinned in the pocket.   I believe the handkerchief and pinning part of the story, but I do not believe the claimant and the farmer about the amount.   My rea-

sons for this are many. I was not pleased with their manner. They were too circumstantial, paid too much attention to trivialities, agreed too well in minor matters. It was too large a sum to be left by such a man in the hands of his employer for so long a time. No one was produced to tell when and how the farmer got the money, and how much he got. Then, too, this claimant brought a suit in the City Court of New York right on the heels of the accident. He made oath to the complaint on December 30, 1903. To such a man the loss of $800 would have looked as big as a mountain, and yet he only complained that he "lost all his baggage, consisting of necessary wearing apparel and traveling conveniences, and all his personal effects, including his necessary traveling expenses and money in the possession of the plaintiff at the time, all of which he was compelled to forsake in his flight from said vessel." He fixes the value of all this at $500. The language is peculiar—"necessary traveling expenses and money in the possession of the plaintiff at the time." I can interpret that allegation by the light of what I now know. He pinned the bulk of his money into his coat pocket, and kept out a small amount which he placed in his trousers pocket for his New York trip, which he calls necessary traveling expenses. The coat and trousers were both left behind, and so he lost both sums.. It is queer, though, that he puts the smaller amount first. It would be easy for a man who had placed $300 in his inside pocket to magnify it into $800 as the years rolled by. If I give him, for lost effects and money, all that he asked for in the City Court, he ought not to feel badly in his mind.

To go back, after pinning the money in his pocket, he went to the dock in New Haven and bought a ticket for New York. He bunked in the hold, taking off his coat, trousers, and shoes. He was awakened by the shock when the boat struck the rock, and found a heavy volume of water rushing into the cabin. In a dazed condition and intensely frightened, he ran to the stairs and up to the deck, leaving his belongings behind him. By the way, the fright must have been more than intense if it forced him to leave his coat behind him, with so much money in the pocket as he says he placed there, but I only throw this in by way of exclamation. He, after 10 minutes, still minus his clothes, with four other passengers, got into a small boat which was fastened by a line to the ship. The captain had ordered the boat lowered, and knew what was done. The small boat became loosened from the ship, and drifted away into the darkness. No one belonging to the ship was in the boat, or in control of it, after the claimant entered. The boat was out on the waters of the Sound for many hours, and at about noon of that day its occupants landed at some distance from a farm house, at which they found food and shelter. The claimant was not a pleasant companion to his fellow castaways, and his conduct was such as to dampen the feeling which one would naturally have for a person in such a plight. He lost, however, all his belongings except what he wore when he jumped from his sleep into the water of the cabin. He was chilled and exhausted. On that same day he reached friends in Brooklyn, who cared for him, and from whose shelter he

set in operation the suit in the City Court above mentioned. He had two or three more or less bad months, but he appears to have taken up work again for his former employer in Montowese about as soon as the real outdoor work of a farm was ready to be turned off. He had some medical advice, and used some liniments and other medical supplies for muscular rheumatism. He states the cost thereof in round numbers, but nothing very definite about it. The New Haven doctor says the man came to him three times for liniments on account of his troubles, and he charged him $1 a visit. The claimant testified that he spent $60 to $70 on the doctor and medicines after he returned to Montowese. His testimony about the Brooklyn illness is of the same kind.

I think that $300 for his pain, expense, and loss of time is ample. He can have that, and he can have $500 for his lost effects and money.

Those in charge of the ship were clearly negligent in permitting the claimant to embark in the small boat without a competent seaman in charge and control thereof. That negligence makes the ship responsible for this claim.

The claimant is entitled to $800 and costs.